[No. 8766–5–I.   Division One.   April 19, 1982.]

THOMAS C. SUTTON, *Respondent,* v. KEITH E.
SHUFELBERGER, ET AL, *Appellants.*

*Reed, McClure, Moceri & Thonn, P.S.,* and *Kathy A. Cochran,* for appellants.

*Emmet T. Walsh* and *Thomas Keefe,* for respondent.

CALLOW, J.—Defendants Shufelbergers and V & J Refrigerated Services, Inc. appeal a judgment for plaintiff Thomas C. Sutton in the amount of $125,000.

The plaintiff, a Seattle police officer who was assigned to the motorcycle traffic division, was injured after he pulled over a vehicle on First Avenue South in Seattle, Washington. The plaintiff testified that he parked his motorcycle behind the stopped vehicle and was in the process of dismounting when his motorcycle was struck by a truck driven by Shufelberger. Following a jury trial, a verdict was returned in favor of the plaintiff.

The defendants raise the following issues:

1. Did the trial court err in refusing to give the defendants' proposed instruction concerning the duty to mitigate damages?

2. Did the trial court abuse its discretion in not permitting evidence as to the benefits the plaintiff received from collateral sources for the limited purpose of showing his motivation in not returning to work?

3. Did the trial court err in refusing to give the defendants' proposed instruction concerning aggravation of a preexisting injury, and in giving the instruction concerning a previous infirm condition?

4. Did the trial court abuse its discretion in not admitting the deposition testimony of Dr. Keith Peterson who failed or refused to respond to a subpoena?

5. Was the instruction concerning the duty of a police officer while engaged in the performance of his duties error because it was a comment on the evidence, confusing and misleading?

6. Should the "professional rescuer" or "fireman's rule" which precludes recovery by public servants who engage in hazardous work be applied to preclude the plaintiff from recovering as a matter of law?

7. Should the plaintiff–respondent be awarded terms and compensatory damages because the appeal is frivolous?

## I
### MITIGATION INSTRUCTION

The trial court refused to give the defendants' proposed instruction which stated:

> In determining whether plaintiff has suffered a loss of wages or a loss of earning capacity, you are to consider that every person has the duty to mitigate damages. A loss of wages is not recoverable to the extent that the plaintiff failed to obtain available alternative employment by earning whatever he could at another occupation. Damages caused by a failure to seek or undertake such employment cannot be recovered.

The defendants contend that because there was evidence that the plaintiff was capable of returning to work, it was error to refuse to give this instruction. We disagree.

■ ■ It is not error to refuse a proposed instruction which is incorrect in any respect. *Hinzman v. Palmanteer*, 81 Wn.2d 327, 501 P.2d 1228 (1972). The proposed instruction concerning mitigation was incorrect in two respects. First, the duty to mitigate damages is not absolute. As was stated in *Kubista v. Romaine*, 87 Wn.2d 62, 67, 549 P.2d 491 (1976):

> Ordinarily to recover for lost wages, a plaintiff must establish *inter alia* his loss of wages was caused by his injuries. However, the loss of wages so established is not recoverable to the extent plaintiff *reasonably* failed to mitigate his damages by earning whatever he could at another occupation.

(Citations omitted. Italics ours.) In *Young v. Whidbey Island Bd. of Realtors*, 96 Wn.2d 729, 732, 638 P.2d 1235 (1982), the court stated:

> The rule . . . is that where one person has committed a tort, . . . or other legal wrong against another, it is incumbent upon the latter to use such means as are reasonable under the circumstances to avoid or minimize the damages. The person wronged cannot recover for any item of damage which could thus have been avoided.

*Accord, Tennant v. Lawton,* 26 Wn. App. 701, 703, 615 P.2d 1305 (1980).

Here, the proposed instruction imposes an absolute duty to mitigate damages. *See* WPI 33.01, Comment; Restatement (Second) of Torts § 918(1) (1979). The instruction incorrectly stated the law and was properly refused.

Further, the party alleging that the damages should have been mitigated has the burden of proof. *Young v. Whidbey Island Bd. of Realtors, supra; Kubista v. Romaine, supra; Burr v. Clark,* 30 Wn.2d 149, 190 P.2d 769 (1948). Defendants' proposed instruction was also incorrect because it did not allocate the burden of proof.

We note that WPI 33.01 provides an instruction concerning mitigation:

> One who sustains an injury for which another is liable is not entitled to recover any damages arising after the original [injury] [occurrence] which are proximately caused by failure of the injured person to exercise ordinary care to avoid or minimize such new or increased damage.
>
> The [defendant] [plaintiff] has the burden to prove [plaintiff's] [defendant's] failure to exercise ordinary care and the amount of damages, if any, which could have been minimized or avoided.

This instruction correctly allocates the burden of proof and should be given whenever substantial evidence is presented creating an issue for the jury as to the injured person's duty to mitigate. "Although not absolutely required, [Washington Pattern Jury Instructions] are to be used in preference to individually drafted instructions." *Bradley v. Maurer,* 17 Wn. App. 24, 28, 560 P.2d 719 (1977).

## II
### EVIDENCE OF COLLATERAL BENEFITS

The defendants contend that they should have been permitted to introduce evidence as to the plaintiff's receipt of disability pension benefits to show his motivation in not returning to work.

■ *Boeke v. International Paint Co.*, 27 Wn. App. 611, 617–18, 620 P.2d 103 (1980), is dispositive of this contention:

> Courts from various jurisdictions have considered the question with conflicting results. The Oregon Supreme Court in *Reinan v. Pacific Motor Trucking Co.*, 270 Ore. 208, 527 P.2d 256 (1974), identified three distinct approaches: a rule of strict exclusion, a rule of general admissibility, and a rule granting the trial judge discretion to admit the evidence in limited situations. . . . We agree that the rule of strict exclusion represents the better view.

We decline to reconsider the rule of strict exclusion of evidence of collateral benefits.

## III
### INSTRUCTIONS CONCERNING PREEXISTING INJURY

■ The defendants assign error to the refusal to give their proposed instruction concerning aggravation of preexisting injury which read:

> If you find that before this occurrence, the plaintiff had a preexisting bodily condition which was causing pain or disability, and further find that because of this occurrence, that condition or the pain or the disability was aggravated, then plaintiff is entitled to recover for the aggravation of the condition or for the pain or disability proximately due to such aggravation, but is not entitled to recover for any physical ailment or disability which may have existed prior to the occurrence or for any from which plaintiff may now be suffering which was not caused or contributed to by reason of the occurrence.

The trial court refused the defendants' proposed instruction on the ground that there was insufficient evidence to support it. The defendants argue that their proposed

instruction was based upon undisputed evidence that the plaintiff had suffered a previous back injury which was symptomatic on the date of the accident. The defendants rely upon the testimony of Dr. Swanson, the emergency room physician, who stated that the plaintiff told him that he suffered chronic and recurrent lower and mid–back problems. The record indicates, however, that the plaintiff testified that his previous back problem had not given him trouble since 1971 and was not causing problems at the time of the accident. Dr. Swanson related the plaintiff's history concerning his previous back problems but he did not give an opinion that at the time of the accident the previous problem was symptomatic. Thus, the trial court did not err in determining that there was insufficient evidence to support the aggravation instruction. *Greenwood v. Olympic, Inc.*, 51 Wn.2d 18, 315 P.2d 295 (1957); *Reeder v. Sears, Roebuck & Co.*, 41 Wn.2d 550, 250 P.2d 518 (1952).

The defendants also contend that it was error to give instruction No. 14 concerning a previous infirm condition without also giving their proposed instruction No. 6. We disagree. Instruction No. 14 was based upon WPI 30.18 which should be given if there is a preexisting condition that was not causing pain or disability. As stated in WPI 30.18, Note on Use at 186:

> Use this instruction [concerning a previous infirm condition] for a pre–existing condition which was not causing pain or disability. If the pre–existing condition was causing pain or disability, use WPI 30.17 [concerning an aggravation of pre–existing condition]. If the evidence is in dispute as to the existence of such pre–existing pain or disability, use both instructions.

Since there was evidence of a preexisting condition, but insufficient evidence that it was causing pain or disability, the trial court was not required to give both instructions.

IV

DEPOSITION TESTIMONY

The defendants contend that the trial court abused its discretion in not admitting the deposition testimony of Dr.

Peterson who failed or refused to respond to a subpoena. We disagree.

■ On the next to the last day of trial the defendants requested permission to admit the deposition testimony of Dr. Peterson who had failed to respond to a subpoena. They relied upon CR 32(a)(3) which states:

> The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: . . . (D) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (E) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.

The trial court is vested under this rule with discretion to admit the deposition testimony of witnesses. *Hammond v. Braden,* 16 Wn. App. 773, 559 P.2d 1357 (1977). A party seeking to introduce the deposition of a witness is required to make a showing that due diligence was exercised in attempting to procure the attendance of the witness at trial. *See Palfy v. Rice,* 473 P.2d 606 (Alaska 1970); 8 C. Wright & A. Miller, *Federal Practice* § 2146 (1970). In the absence of such a showing the refusal to permit the introduction of the deposition is not an abuse of discretion.

Here, the trial commenced on March 19, 1980, however, it was not until 6:05 p.m. on March 24, 1980, that the defendants attempted service of a subpoena on Dr. Peterson by serving it on his wife at their residence. The defendants knew or should have known that they intended to call Dr. Peterson as a witness and they had a duty to exercise due diligence in serving the subpoena prior to the next to the last day of trial. Under these circumstances, the trial court did not abuse its discretion in refusing to admit the deposition.

Further, the trial court ruled that his testimony was merely cumulative. There were a number of other medical witnesses and defense doctors who testified in support of the defendants' claim that the plaintiff did not suffer a

serious back injury as a result of the accident. The refusal to permit cumulative evidence was not an abuse of discretion.

## V
### INSTRUCTION CONCERNING SPECIAL DUTY OF POLICE OFFICER

In instruction No. 11 the court defined the duty of a police officer as follows:

A police officer while in the performance of his duties in the pursuit and apprehension of an actual or suspected violator of the law has certain privileges and is exempted from compliance with traffic regulations or rules of the road while the vehicle he is operating is displaying either or both a red light or one or more blue lights. Such a police officer may park or stand irrespective of any traffic regulations relative thereto and, further, is not required to keep a constant lookout for approaching vehicles.

A police officer must exercise that care which an ordinarily prudent officer, similarly engaged in traffic enforcement, would take while carrying out his duties.

The defendants concede that under certain circumstances this instruction is a correct statement of law. *See Dailey v. Lange,* 20 Wn. App. 12, 578 P.2d 1322 (1978). They contend, however, that in this case it was a comment on the evidence, and was confusing and misleading. We disagree.

The instruction informed the jury of the special duty situation of a police officer. The instruction told the jury that a police officer engaged in traffic enforcement must exercise that degree of care which an ordinarily prudent officer would exercise in similar circumstances. This instruction did not prevent the jury from finding comparative negligence. The defendants were able to argue that the plaintiff did not act reasonably under the circumstances, and the instruction was not confusing, misleading or a comment on the evidence.

## VI
### FIREMAN'S RULE

The defendants contend that because a police officer assigned to motorcycle duty engages in certain risks inherent in his work that he should not be able to recover for injuries that occur while on duty. The defendants rely on the professional rescue cases in Washington which restrict the rescue doctrine as to professional rescuers, *see, e.g., Maltman v. Sauer,* 84 Wn.2d 975, 530 P.2d 254 (1975),[1] and cases from California which have restricted recovery by firemen and policemen. *See, e.g., Walters v. Sloan,* 20 Cal. 3d 199, 571 P.2d 609, 142 Cal. Rptr. 152 (1977). The defendants concede that the "fireman's rule" has never been applied to police officers in Washington State, but urge us to do so as a matter of policy. We find it unnecessary to determine whether the rule should be adopted in this state because it would not apply to the facts of this case in any event.

█ The so-called "fireman's rule" negates liability to the fireman, police officer or other official by the one whose negligence or conduct brought the injured official to the scene. The rule denies recovery by the injured official from the one whose sole connection with the injury is that his act placed the fireman or police officer in harm's way.[2] *See*

---

[1]As observed in *Maltman v. Sauer,* 84 Wn.2d 975, 979, 530 P.2d 254 (1975), "the proper test for determining a professional rescuer's right to recovery under the 'rescue doctrine' is whether the hazard ultimately responsible for causing the injury is inherently within the ambit of those dangers which are unique to and generally associated with the particular rescue activity. Stated affirmatively, it is the business of professional rescuers to deal with certain hazards, and such an individual cannot complain of the negligence which created the actual necessity for exposure to *those* hazards."

[2]*Krauth v. Geller,* 31 N.J. 270, 273–74, 157 A.2d 129, 131 (1960), noted that the rule is based upon public policy and concluded "it is the fireman's business to deal with that very hazard and hence, perhaps by analogy to the contractor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid. Probably most fires are

*Giorgi v. Pacific Gas & Elec. Co.,* 266 Cal. App. 2d 355, 72 Cal. Rptr. 119 (1968).

The rule does not apply to the third party whose intervening negligence injures the official while he is in the performance of his duty. The rule has not been applied to forgive negligent or intentional injury to the official by an intervenor. *Farmer v. Union Oil Co.,* 75 Cal. App. 3d 42, 141 Cal. Rptr. 848 (1977).

In *Walters v. Sloan, supra* at 202 n.2, which was the first California case to apply the "fireman's rule" to police officers, the court stated that a police officer struck by a speeding vehicle while placing a ticket on an illegally parked car may maintain an action against the speeder but not against the owner of the parked car for negligent parking:

> Other negligent conduct or willful misconduct may create liability to the injured fireman or policeman. (See *Giorgi v. Pacific Gas & Elec. Co.* (1968) 266 Cal.App.2d 355, 360 [72 Cal.Rptr. 119]; 2 Harper & James, The Law of Torts (1956) pp. 1503–1505.) *Thus a police officer who while placing a ticket on an illegally parked car is struck by a speeding vehicle may maintain action against the speeder but the rule bars recovery against the owner of the parked car for negligent parking.*

(Italics ours.)

■ We find that the issues raised by the defendants are debatable and therefore terms and compensatory damages will not be imposed. *Streater v. White,* 26 Wn. App. 430, 613 P.2d 187 (1980).

---

attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences. Hence, for that risk, the fireman should receive appropriate compensation from the public he serves, both in pay which reflects the hazard and in workmen's compensation benefits for the consequences of the inherent risks of the calling."

.

Affirmed.

JAMES and CORBETT, JJ., concur.