[No. 20828–4–I.   Division One.   August 22, 1988.]

GLENNA M. WARD, *Appellant,* v. ASBJORN TORJUSSEN, *Defendant,* CHARLES A. GITTINGS, *Respondent.*

*David W. Soukup, Donald J. Horowitz, Lori Haskell,* and *Levinson, Friedman, Vhugen, Duggan, Bland & Horowitz,* for appellant.

*Edwin J. Snook, Keith A. Bolton,* and *Petersen, Lycette & Snook,* for respondent.

COLEMAN, A.C.J.—Glenna M. Ward appeals the trial court's order of summary judgment dismissing her claim of negligence against Charles A. Gittings. We reverse and remand for further proceedings.

On February 5, 1982, Glenna Ward, who was working as a Bellevue police officer, responded to an emergency call to back up another patrol unit searching for a prowler. With her police car siren on and the light bar flashing, she proceeded westbound on N.E. 24th Street. In compliance with department regulations, she stopped at the red light at 148th Avenue N.E. before proceeding into the intersection. Gittings was traveling southbound on 148th and entered the intersection at N.E. 24th on a green light. He looked to his left before entering the intersection and observed some kind of activity, but he did not hear the siren or see the emergency vehicle. The impact of Gittings' vehicle with the patrol car pushed the patrol car into a stopped tanker truck damaging all three vehicles.

Gittings was issued a citation for failure to yield the right of way to an emergency vehicle. Gittings contested the citation, and a trial was held in Bellevue District Court on April 16, 1982. In its findings of fact and conclusions of law, the district court judge found that the City had not provided sufficient evidence to establish a violation. The City appealed to King County Superior Court and on November 19, 1982, the judgment was affirmed.

On December 7, 1984, Ward filed a negligence claim against Gittings for the injuries she suffered in the collision. On July 6, 1987, Gittings filed a motion for summary judgment based on collateral estoppel and the professional rescuer rule. On July 20, 1987, the trial court entered an order

granting Gittings' motion for summary judgment dismissing Ward's claim. The court denied Ward's motion for reconsideration and Ward appeals.

We first consider whether appellant is collaterally estopped from asserting a negligence claim against respondent.

Collateral estoppel bars relitigation of a particular issue or determinative fact. *Bordeaux v. Ingersoll Rand Co.*, 71 Wn.2d 392, 395–96, 429 P.2d 207 (1967). This doctrine is designed to curtail multiplicity of actions and harassment in the courts. *Bordeaux*, at 395. The elements of collateral estoppel are:

> (1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied.

*Malland v. Department of Retirement Sys.*, 103 Wn.2d 484, 489, 694 P.2d 16 (1985). The party asserting estoppel has the burden of proof. *McDaniels v. Carlson*, 108 Wn.2d 299, 303, 738 P.2d 254 (1987). Appellant contends that collateral estoppel was erroneously applied because elements (1), (3), and (4) are not present in the instant case.

We hold that the issues involved in the instant case were identical. The issue before the Bellevue District Court in the initial proceeding and the issue before the trial court was whether respondent was negligent.

## PRIVITY OF PARTIES

Appellant contends that collateral estoppel cannot be applied because she was not a party to the original proceeding, nor in privity with the City of Bellevue in that proceeding. Courts have held that binding a person to a judgment from an action of which he had no notice and no opportunity to be heard is a denial of due process. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S.

306, 320, 94 L. Ed. 865, 70 S. Ct. 652 (1950); Note, *Collateral Estoppel of Nonparties,* 87 Harv. L. Rev. 1485, 1496 (1974).

Respondent contends that appellant was in privity with the City of Bellevue because she was an agent of the City when she participated as a witness in the initial proceeding. Generally, agency has been found to provide the requisite privity only when the principal or agent is attempting to benefit from collateral estoppel, not when collateral estoppel is used *against* the principal or agent. *See, e.g., Rains v. State,* 100 Wn.2d 660, 665–66, 674 P.2d 165 (1983) (plaintiff was collaterally estopped from seeking damages from the Public Disclosure Commission and the State for civil rights violations when a federal court had already determined that named members of the Commission had not violated his civil rights); *see also Mooney v. Central Motor Lines, Inc.,* 222 F.2d 572 (6th Cir. 1955) (plaintiff is estopped from raising employee's negligence against employee after judgment for employer is entered on same issue); *Laffoon v. Waterman S.S. Corp.,* 111 F. Supp. 923 (S.D.N.Y. 1953) (seaman is barred from recovering damages for negligence against steamship company acting as agent of United States after dismissal of negligence action against United States); Annot., 23 A.L.R.2d 710, § 16, at 731–35 (1952), 209–12 (Supp. 1982). No cases have been found to support respondent's attempt to use collateral estoppel *against* appellant as an agent.

Respondent further argues that as a witness who was fully acquainted with the character and object of the prior proceeding, appellant can be estopped from relitigating a material issue in that proceeding. As authority, respondent cites *Hackler v. Hackler,* 37 Wn. App. 791, 795, 683 P.2d 241 (1984), in which the court found that plaintiff was not in privity with the parties in the prior proceeding, but was estopped from relitigating the issue resolved in that proceeding because he was a witness who was fully acquainted with its character and object and interested in its result. In *Hackler,* Ron and Gwynne Hackler purchased their home

from Archie Hackler. Ron and Gwynne then reconveyed their interest by quitclaim deed to Archie. Ron and Gwynne were subsequently divorced and Archie testified for Ron at the dissolution proceeding. He did not, however, reveal the existence of the quitclaim deed. *Hackler,* at 792. After the trial court awarded the home to Gwynne, Archie brought an action to quiet title. He claimed that the quitclaim deed had been lost at the time of the dissolution proceeding and he had since found it. *Hackler,* at 792. In holding that Hackler was estopped from relitigating the ownership issue, the court reasoned that by testifying as a witness, Hackler had an interest in the trial's outcome and was aware of its object. Moreover, the court noted that Archie could have intervened in the litigation, but did not. *Hackler,* at 795. Unlike *Hackler,* appellant in the instant case did not have an interest in the prior litigation[1] or the opportunity to intervene.[2] Hackler knew that he could bring an action to protect his interest and withheld information in the judicial proceeding hoping for the outcome he favored. It was only when the party that Hackler favored did not prevail that he asserted his alleged interest in the property. Appellant, however, did not withhold any information and did not have a claim at the time of the district

---

[1] 1B J. Moore, *Federal Practice* ¶ 0.411[6], at 445–56 (2d ed. 1983) states that three types of interest have been considered sufficient to invoke estoppel against a participating nonparty: (1) A legal right, interest or duty dependent wholly or in part on the cause of action before the court for adjudication, *e.g.,* a grantee who participates in a title suit between a third party and his grantor after the grantee acquired interest; (2) a proprietary right that will be affected by the outcome of the litigation, *e.g.,* a shareholder who participates in the defense of the corporation; and (3) a legal right, interest or duty dependent on an issue of fact, or of mixed fact and law before the court for adjudication, *e.g.,* property insurers who participate in the defense of another insurer of the same property. Appellant's interest does not fall into any of the three categories.

Moore also states that the level of participation generally required is control or joint control of the litigation and the decision to appeal. Moore, at 456. Appellant did not have control or joint control in the prior proceeding.

[2] Respondent contends that under JCR 24, appellant could intervene. The Justice Court Traffic Infraction Rules (JTIR), however, do not provide for intervention or the application of Justice Court Rules (JCR) to traffic infraction hearings.

court trial that she could have asserted in that proceeding. More important, the procedures in traffic infraction hearings call for expeditious disposition focused only on the statutory violation. The traffic infraction court rules do not provide for pretrial discovery that would occur in preparation for a personal injury trial. The procedures were established to provide an efficient, expeditious settlement of contested citations. Consequently, all hearings must be heard within 90 days of notice, and intervention is not permitted. *See* JTIR 2.6(a)(1). Thus, unlike *Hackler,* the prior proceeding in the instant case did not provide an opportunity to fully litigate the issues raised in these pleadings.

Respondent further argues that the Washington Supreme Court has permitted estoppel to be applied against a nonparty in *Kyreacos v. Smith,* 89 Wn.2d 425, 572 P.2d 723 (1977). In *Kyreacos,* the wife of the decedent attempted to recover damages from the City of Seattle as respondeat superior as a result of the murder of her husband by a Seattle police detective. The detective had been convicted of premeditated murder. *Kyreacos,* at 426–27. The *Kyreacos* court noted that a recording of the murder obtained from a recorder taped to the decedent's body produced overwhelming evidence of premeditation that could only lead a reasonable person to conclude that the detective planned to murder the decedent. *Kyreacos,* at 429. Thus, the court affirmed the trial court's holding that the commission of a premeditated murder is not within the scope of the duties of a police detective; therefore, the widow was precluded from litigating the issue of whether the detective's conduct was within the scope of his duties because the premeditation issue had already been decided. *Kyreacos,* at 427. The *Kyreacos* court, however, limited its holding to these unique facts. *Kyreacos,* at 428.

The instant case does not share the unique fact pattern of *Kyreacos.* Unlike *Kyreacos,* the evidence in the instant case is not so compelling that no new evidence could change the outcome. Indeed, appellant contends that she has new evidence that respondent had a hearing impairment. In

*Kyreacos,* the burden of proof was beyond a reasonable doubt and the defendant was afforded the full panoply of rights and procedures required for a fair trial. It is understandable that under these circumstances, the court would not permit the relitigation of the premeditation issue. The prior proceeding in the instant case, as discussed, was an expeditious hearing that did not even include pretrial discovery. Moreover, appellant did not have an opportunity to control any part of the litigation. She did not have the right to conduct her own examination of witnesses, choose her own theory of the case, or be represented by counsel. All decisions in the presentation of the City's case fell within the exclusive province of the city attorney who represented the City of Bellevue, not appellant.

Appellant was not in privity with the parties in the prior proceeding. While the issue of negligence was litigated in the limited proceedings required in traffic court, appellant did not have an opportunity to control the litigation or participate at a level commensurate with due process. Thus, the trial court erred when it dismissed her claim based on collateral estoppel.

### PREVENT AN INJUSTICE

Finally, for the reasons stated above, we hold that the invocation of collateral estoppel against appellant would be unjust because it would preclude her from trying the personal injury claim that she could not try at the defendant's traffic infraction hearing. Therefore, appellant's claim is not barred by collateral estoppel.

We next address whether appellant's claim is barred by the professional rescuer rule.

■ The professional rescuer doctrine, often called the "fireman's rule," prohibits a fireman, police officer, or other official from recovering damages for injuries sustained when responding in an official capacity from the one whose negligence or conduct brought the injured official to the scene. *Sutton v. Shufelberger,* 31 Wn. App. 579, 587, 643 P.2d 920

(1982). Our Supreme Court stated that the test for determining when the doctrine would prohibit recovery includes an evaluation of whether the hazard is generally recognized as being within the scope of the particular rescue operation.

We conclude that the proper test for determining a professional rescuer's right to recovery under the "rescue doctrine" is whether the hazard ultimately responsible for causing the injury is inherently within the ambit of those dangers which are unique to and generally associated with the particular rescue activity. Stated affirmatively, it is the business of professional rescuers to deal with certain hazards, and such an individual cannot complain of the negligence which created the actual necessity for exposure to *those* hazards. When the injury is the result of a hazard generally recognized as being within the scope of dangers identified with the particular rescue operation, the doctrine will be unavailable to that plaintiff.

*Maltman v. Sauer*, 84 Wn.2d 975, 979, 530 P.2d 254 (1975). Respondent contends that the rule precludes appellant's claim because the risk of a collision while responding to a prowler assistance call is foreseeable and inherent in police work. Respondent's argument fails, however, because a prowler assist call does not inherently involve the hazard encountered here. Moreover, the professional rescuer rule only relieves the perpetrator of the act that caused the rescuer to be at the scene; it does not relieve a party whose intervening negligence injures the rescuer.[3] *Sutton,* at 588. Since appellant was injured while on her way to a prowler

---

[3]Respondent cites *Black Indus. v. Emco Helicopters, Inc.,* 19 Wn. App. 697, 699, 700, 577 P.2d 610 (1978), in which the court states that public policy requires denial of recovery whenever a person who is aware of the risks voluntarily confronts the risks for compensation. Respondent implies that the rule favors *any* negligent party, not merely the party responsible for the rescuer's presence at the scene. Respondent quotes out of context in order to reach that conclusion. The *Black* court was merely responding to the argument that the rescuer rule must be confined to municipal firemen. In *Black,* the owners of a helicopter that crashed while being used by the State to fight a forest fire attempted to recover damages from the employer of the person who started the fire. The *Black* court denied recovery because it found that a helicopter crash is an inherent danger in the rescue operation. *Black,* at 698–99.

assist call, the only party who may be relieved of liability for damages under the rescuer rule is the prowler. Because respondent's action was an intervening event, he is not relieved of liability under the rescuer rule. Therefore, appellant's claim is not barred by the professional rescuer rule.

The judgment of the trial court is reversed, and the case is remanded for a trial on appellant's personal injury claim.

PEKELIS and WINSOR, JJ., concur.