[No. 39475-4-I.    Division One.    November 24, 1997.]

YONG RIP LUDEMAN, *Appellant*, v. THE DEPARTMENT OF
HEALTH, *Respondent*.

752

*Tom P. Conom*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Mark O. Brevard, Assistant*, for respondent.

Cox, J. — The Department of Health revoked Yong Rip Ludeman's massage license and imposed a fine on her for violating the Uniform Disciplinary Act (UDA). The UDA governs the professional conduct of licensed massage practitioners. Because double jeopardy is not implicated under the facts of this case, collateral estoppel does not apply, and there was no violation of the prohibition against ex post facto laws, we affirm.

Yong Rip Ludeman was a massage practitioner licensed by the State of Washington. The Federal Way District Court found her guilty of prostitution in January 1991.

In March 1992, the State charged Ludeman in Shoreline District Court with prostitution and resisting arrest. These charges were based on an incident separate from that on which the Federal Way District Court conviction was based. The State alleged that Ludeman had sexual contact with an undercover officer during a massage. Although the court dismissed both charges, the record does not indicate the basis for the dismissals.

In June 1992, the state Department of Health's massage program charged Ludeman with violations of RCW 18.130.180(1) and RCW 18.130.180(24). The former statute prohibits acts of moral turpitude, and the latter prohibits sexual contact with a patient. The health law judge conducted an administrative hearing on the charges. The judge decided that Ludeman's prostitution conviction did not establish that she had any sexual contact with her client during the 1991 incident. But the judge concluded that Ludeman's conduct during that incident violated RCW 18.130.180(1), which prohibits acts of moral turpitude. The judge further found that Ludeman had sexual contact with the undercover officer in 1992. According to the judge, this conduct violated RCW 18.130.180(24). On the basis of these violations, the judge ordered the revocation of Ludeman's massage license for at least five years and fined her $3,000.

On review, the King County Superior Court affirmed the Department's decision. Ludeman appeals.

## I. Standard of Review

■ Judicial review of a final administrative decision is governed by RCW 34.05.570(3).[1] In reviewing an administrative decision, we stand in the same position as the superior court.[2] We apply the appropriate standard of review directly to the administrative record.[3]

■ ■ We will grant relief from an agency order in an adjudicative proceeding where the agency has erroneously interpreted or applied the law, the order is not supported by substantial evidence, or the order is arbitrary and capricious.[4] Under the error of law standard, we accord substantial weight to the agency's interpretation of the law, but may substitute our own judgment for that of the agency.[5] We may defer to the agency's interpretation of the law only where the agency is interpreting the body of law it administers or enforces.[6]

## II. Double Jeopardy

Ludeman contends that the penalties the State imposed in the administrative proceeding dealing with her license as a massage professional constituted punishment for conduct that was the subject of prior prosecutions in the district courts. We disagree.

---

[1]*Callecod v. Washington State Patrol*, 84 Wn. App. 663, 670, 929 P.2d 510, *review denied*, 132 Wn.2d 1004 (1997).

[2]*Wilson v. Employment Sec. Dep't*, 87 Wn. App. 197, 940 P.2d 269, 271-72 (1997).

[3]*Wilson*, 87 Wn. App. at 200, 940 P.2d at 272.

[4]*Callecod*, 84 Wn. App. at 670; *Wilson*, 87 Wn. App. at 200-01, 940 P.2d at 272.

[5]*Heinmiller v. Department of Health*, 127 Wn.2d 595, 601, 903 P.2d 433, 909 P.2d 1294 (1995), *cert. denied*, 518 U.S. 1006 (1996).

[6]*See William Dickson Co. v. Puget Sound Air Pollution Control Agency*, 81 Wn. App. 403, 407, 914 P.2d 750 (1996); *Citizens for a Safe Neighborhood v. City of Seattle*, 67 Wn. App. 436, 440, 836 P.2d 235 (1992), *review denied*, 120 Wn.2d 1020 (1993).

■ The double jeopardy clause of the Fifth Amendment to the United States Constitution protects against multiple punishments for the same offense.[7] Because Ludeman makes no argument regarding the Washington Constitution and fails to perform the analysis required by *State v. Gunwall*,[8] we need only consider the federal constitution's prohibition against double jeopardy.[9]

■ Double jeopardy applies where the two offenses for which the defendant is punished or tried are the same offense under the "same elements," or *Blockburger*[10] test.[11] The test, as recently stated by the United States Supreme Court, is "whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution."[12]

Here, the State charged Ludeman with prostitution in both criminal proceedings. Prostitution is defined by RCW 9A.88.030:

(1) A person is guilty of prostitution if such person engages or agrees or offers to engage in sexual conduct with another person in return for a fee.

(2) For purposes of this section, "sexual conduct" means "sexual intercourse" or "sexual contact," both as defined in chapter 9A.44 RCW.

In the administrative proceeding, the Department charged Ludeman with violations of RCW 18.130.180. That statute provides in relevant part that

---

[7]*State v. McClendon*, 131 Wn.2d 853, 862, 935 P.2d 1334 (citing *United States v. Halper*, 490 U.S. 435, 440, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989)), *cert. denied*, 118 S. Ct. 624 (1997).

[8]106 Wn.2d 54, 720 P.2d 808 (1986).

[9]*See McClendon*, 131 Wn.2d at 862 n.22.

[10]*Blockburger v. United States*, 284 U.S. 299, 76 L. Ed. 306, 52 S. Ct. 180 (1932).

[11]*State v. Gocken*, 127 Wn.2d 95, 100-02, 896 P.2d 1267 (1995) (citing *United States v. Dixon*, 509 U.S. 688, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993)).

[12]*Dixon*, 509 U.S. at 696.

The following conduct, acts, or conditions constitute unprofessional conduct for any license holder or applicant under the jurisdiction of this chapter:

(1) The commission of any act involving moral turpitude, . . . relating to the practice of the person's profession, whether the act constitutes a crime or not.

. . . .

(24) Abuse of a client or patient or sexual contact with a client or patient[.]

■ Ludeman first contends that the courts have applied the "same conduct" test rather than the "same elements" test in cases such as this one where civil and criminal proceedings are at issue. But none of the cases Ludeman cites persuasively address the issue she raises.[13] We therefore apply the "same elements" test.

Ludeman next contends that even if the same elements test does apply here, the courts have interpreted that test quite liberally where both civil and criminal proceedings are involved. Again, her contention is not supported by the cases she cites. In each of these cases, the courts applied the *Dixon* "same elements" test where the defendants were prosecuted for crimes and the government instituted civil

---

[13]*See Halper*, 490 U.S. at 441 (the court found the "punishment" issue determinative; the parties did not dispute whether the same offense was charged in both proceedings); *Department of Revenue v. Kurth Ranch*, 511 U.S. 767, 114 S. Ct. 1937, 128 L. Ed. 2d 767 (1994) (the court reached only the issue of whether a tax constituted punishment); *United States v. $405,089.23 U.S. Currency*, 33 F.3d 1210 (9th Cir. 1994), *rev'd on other grounds sub nom. United States v. Ursery*, 518 U.S. 267, 116 S. Ct. 2135, 135 L. Ed. 2d 549 (1996) (the court addressed only issues of punishment and separate proceedings; the same violations of the same statutes were at issue in both civil and criminal proceedings); *People v. Towns*, 269 Ill. App. 2d 907, 646 N.E.2d 1366, 1368, 207 Ill. Dec. 279 (1995), *rev'd, In re P.S.*, 169 Ill. 2d 260, 661 N.E.2d 329, 214 Ill. Dec. 475 (the court addressed issues of punishment and separate proceedings, not the same offense), *cert. denied sub nom. Turner v. Illinois*, 519 U.S. 806 (1996); *United States v. Aguilar*, 886 F. Supp. 740, 743 (E.D. Wash. 1994); *United States v. Heitzman*, 886 F. Supp. 737, 739 (E.D. Wash. 1994) (the court, without citing authority or analyzing the issue presented in this case, stated that the same conduct was involved in both proceedings).

forfeiture proceedings against them based on those crimes.[14] For example, in *Oakes* the court determined that the civil forfeiture statute in question required a showing of a violation of one of several criminal offenses. Therefore,

[a]ny forfeiture under section 881(a)(7) . . . requires a preceding violation of the controlled substance statutes . . . .

The civil forfeiture action and the Petitioner's criminal prosecution addressed the identical violation of the identical laws; the only difference between the proceedings was the remedy sought by the Government.[15]

This constitutes a straightforward application of the *Dixon* "same elements" test.

Applying the "same elements" test to the charges in this case, it is clear that "prostitution" and "sexual contact with a client" are not the same offense. The crime of prostitution involves sexual contact or an offer therefor in exchange for a fee. In contrast, RCW 18.130.180(24), a basis for the revocation and fine in the administrative proceeding, makes no mention of a fee. Likewise, RCW 18.130.180(24) requires proof of sexual contact. But a conviction of prostitution is possible on a showing only that an *offer* of sexual contact occurred.

Similarly, acts involving moral turpitude and prostitution are not the same offense. RCW 18.130.180(1) requires a showing that an act of moral turpitude relates to the practice of a person's profession.[16] This is not among the elements of prostitution. In addition, the crime of prostitution requires a specific showing that sexual contact or an offer for such contact was made in exchange for a fee. In

---

[14]*United States v. Sherrett*, 877 F. Supp. 519 (D. Or. 1995), *rev'd in part on other grounds by United States v. Vominh*, 107 F.3d 19 (9th Cir. 1996), *cert. denied*, 519 U.S. 1118, and 520 U.S. 1121 (1997); *Oakes v. United States*, 872 F. Supp. 817 (E.D. Wash. 1994), *rev'd on other grounds*, 92 F.3d 1195 (9th Cir. 1996); *United States v. Ursery*, 59 F.3d 568 (6th Cir. 1995), *rev'd on other grounds*, 518 U.S. 267, 116 S. Ct. 2135, 135 L. Ed. 2d 549 (1996).

[15]*Oakes*, 872 F. Supp. at 824.

[16]*See also Haley v. Medical Disciplinary Bd.*, 117 Wn.2d 720, 731, 818 P.2d 1062 (1991).

contrast, acts of moral turpitude encompass a wide range of conduct. Each of these offenses includes an element the other does not. They are not the same offense under the "same elements" test.

Ludeman finally argues that even if the offenses of acts of moral turpitude and sexual contact with a client are not the same offense as prostitution under the "same elements" test, we may conclude that they are the same offense if there exist clear indications that the Legislature intended that the offenses be treated as the same. We do not see any such legislative intent.

In *State v. Calle*,[17] our Supreme Court stated that the *Blockburger* test and Washington's very similar "same evidence" test[18] are essentially rules of statutory construction.[19] While these tests establish a presumption that the Legislature intended two offenses with different elements to be separate offenses, the tests are not determinative where there is clear evidence of contrary legislative intent.[20]

In this case, there is no evidence that the Legislature intended the offenses set forth in RCW 18.130.180 and the crime of prostitution to be the same offense. First, there is nothing in the language of either statute to indicate such intent. It is true that RCW 18.130.180(1) does refer to acts that constitute crimes. But a determination that a professional has committed an act of moral turpitude does not turn on whether that individual has committed a crime. We contrast the Labor and Industries (L&I) fraud statute at issue in *State v. Hull*,[21] where the court found that the Legislature intended that L&I fraud be treated as a "more

---

[17]125 Wn.2d 769, 888 P.2d 155 (1995).

[18]*Calle*, 125 Wn.2d at 777.

[19]*Calle*, 125 Wn.2d at 778.

[20]*Calle*, 125 Wn.2d at 780.

[21]83 Wn. App. 786, 793, 924 P.2d 375 (1996), *review denied*, 131 Wn.2d 1016 (1997).

specific . . . species of theft."[22] That statute specifically refers to the criminal theft provision and incorporates the degrees of theft by including the value of benefits obtained as an element.[23]

It appears that the Legislature intended by way of the UDA to impose a strict set of conduct requirements on professionals in whom the public places its trust and respect in order to preserve the integrity of the profession and protect the public.[24] This goal differs from that of the criminal justice system.

Because the crime of prostitution and the violations of the UDA are not the same offense for the purpose of double jeopardy analysis, we need not reach the argument that the revocation of Ludeman's massage license and the fine the Department imposed constitute punishment within the meaning of the Double Jeopardy Clause.

### III. Collateral Estoppel

Ludeman contends that the four requirements for collateral estoppel were met with respect to the Shoreline District Court prosecution. We disagree.

To establish that collateral estoppel applies, Ludeman must show that: (1) identical issues are involved in both actions; (2) the first action resulted in a final judgment on the merits; (3) the party against whom estoppel is asserted was a party to or was in privity with a party to the prior adjudication; and (4) application of estoppel would

---

[22]83 Wn. App. at 794.

[23]RCW 51.48.020(2) provides that "[a]ny person claiming benefits under this title, who knowingly gives false information required in any claim or application under this title shall be guilty of a felony, or gross misdemeanor in accordance with the theft and anticipatory provisions of Title 9A RCW."

[24]See Haley, 117 Wn.2d at 731-34 (discussing RCW 18.130.180(1) in the context of a proceeding against a physician).

not work an injustice against the Department.[25] All four of these elements must be present.[26]

█ The Department first contends that different issues were involved in the two proceedings. Ludeman argues that the same issue, the question of whether she engaged in prostitution, is raised by the criminal and administrative proceedings. She points to 85 pages of the record to show that in the Shoreline proceeding, she was successful, after a complete evidentiary hearing, on her motions to suppress and dismiss. First, the 85 pages of record referenced are not all related to the Shoreline proceeding. It is not the job of this court to search through large portions of the record to identify the relevant facts.[27] But after our exhaustive search of the cited portion of the record, a search we should not be required to undertake,[28] we conclude that the court held an evidentiary hearing and dismissed the action. However, there is nothing in the record to indicate what issue was involved in the hearing and why the case was dismissed. It is therefore impossible to determine the nature of the issues in the Shoreline proceeding.

██ ██ The party asserting collateral estoppel bears the burden of establishing it.[29] "A court will not apply collateral estoppel if, because of ambiguity or indefiniteness, it is unclear whether the issue was previously determined."[30]

---

[25]*Barlindal v. City of Bonney Lake*, 84 Wn. App. 135, 142, 925 P.2d 1289 (1996) (quoting *Hanson v. City of Snohomish*, 121 Wn.2d 552, 562, 852 P.2d 295 (1993)).

[26]*State v. Williams*, 132 Wn.2d 248, 254, 937 P.2d 1052 (1997).

[27]*Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 819, 828 P.2d 549 (1992).

[28]*Cowiche Canyon Conservancy*, 118 Wn.2d at 819.

[29]*Williams*, 132 Wn.2d at 254 (citing *McDaniels v. Carlson*, 108 Wn.2d 299, 303, 738 P.2d 254 (1987)).

[30]*Estate of Sly v. Linville*, 75 Wn. App. 431, 435, 878 P.2d 1241 (1994) (*citing Henderson v. Bardahl Int'l Corp.*, 72 Wn.2d 109, 118, 431 P.2d 961 (1967)).

The use of the same evidence in both proceedings is not conclusive.[31]

Because the record does not indicate the basis on which the Shoreline District Court dismissed the action, we cannot conclude that the same issues were litigated in that case as were presented in the administrative action.

Ludeman's conclusory statement that the question of whether she committed prostitution was at issue in both proceedings is not persuasive. The crime of prostitution raises several issues, including whether there was an offer of sexual contact and whether a fee was involved. Ludeman does not point to any specific issue. As noted above, RCW 18.130.180(24)'s prohibition against sexual contact with a client has different elements from the crime of prostitution. Thus, a dismissal of the prostitution charge does not necessarily preclude litigation of the distinct issues involved in RCW 18.130.180(24).

Ludeman also contends that the Shoreline court granted her motion to suppress evidence. She argues that this order collaterally estops any further action relating to the 1992 events. But this argument finds no support in the cases. In *Barlindal v. City of Bonney Lake*,[32] the superior court, in a criminal proceeding, determined that evidence was unlawfully obtained. The Court of Appeals held that the City of Bonney Lake was collaterally estopped from arguing in a subsequent forfeiture proceeding that the evidence was lawfully obtained. It was clear in that case that the issue already litigated in the criminal action was identical to the issue raised in the forfeiture proceeding. Such specificity is not present in the record of the criminal proceeding before the Shoreline court in this case.

Because Ludeman has failed to establish that the issues raised in the administrative proceeding were identical to

[31]*Linville*, 75 Wn. App. at 437.

[32]*Barlindal*, 84 Wn. App. at 142.

those litigated in the Shoreline case, we need not consider the other elements of collateral estoppel.

## IV. Ex Post Facto

Finally, Ludeman contends that the health law judge violated the prohibition against ex post facto laws by calculating the fine under a statute that was not enacted until after the events on which Ludeman's prosecutions were based. She is wrong.

Both the United States and the Washington Constitutions prohibit the use of increased penalties to punish acts that occurred before the effective dates of the increase.[33] Former RCW 18.130.160(8), which was enacted in 1984, provides that the disciplinary authority may impose a fine of up to $1,000 per violation. Ludeman argues that the judge imposed a fine three times the size of the maximum fine permitted. But Ludeman has overlooked the fact that the statute permits fines of up to $1,000 *per violation*. In this case, the judge determined that three violations had occurred and therefore could have fined Ludeman $1,000 per violation, a total of $3,000. There is no ex post facto violation.

We affirm the order affirming the administrative decision.

KENNEDY, A.C.J., and AGID, J., concur.

---

[33]*State v. Parker*, 132 Wn.2d 182, 191, 937 P.2d 575 (1997) (citing U.S. Const. art. I, § 9 and Wash. Const. art. I, § 23).